JAMES C. NIELSEN (111889)
 jnielsen@nkllp.law
DANIEL N. KATIBAH (293251)
 dkatibah@nkllp.law
NIELSEN KATIBAH LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
T: (415) 693-0900; F (415) 693-9674

Attorneys for Associated Industries Insurance Company, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>GERAGOS & GERAGOS, APC, a California professional corporation; and MARK GERAGOS, an individual,<br><br>Defendants. | No. 2:21-cv-01963-RGK-KS<br><br>**MEMORANDUM IN SUPPORT OF ASSOCIATED'S MOTION TO DISMISS AMENDED COUNTERCLAIMS [FED. R. CIV. P. 12(B)(6)]**<br><br>Date:   October 25, 2021<br>Time:  9:00 a.m.<br>Room: 850, 8th Floor<br><br>Hon. R. Gary Klausner |
| GERAGOS & GERAGOS, APC, a California professional corporation; and MARK GERAGOS, an individual,<br><br>Counter-claimants,<br><br>v.<br><br>ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., a Florida corporation; and ARCH INSURANCE COMPANY, a Missouri corporation,<br><br>Counter-defendants. | |

# TABLE OF CONTENTS

Introduction ........................................................................................................ 1

Pleaded Facts ...................................................................................................... 2

1.    The Associated policy. ................................................................. 2

2.    The *Franklin* lawsuit. .................................................................. 3

3.    Associated defends Geragos in *Franklin* under reservations of rights. .. 6

4.    This lawsuit. .................................................................................. 6

Discussion ......................................................................................................... 10

1.    The <u>first</u> counterclaim fails because Geragos cannot allege any facts
      showing Associated <u>breached</u> the policy. ............................... 11

      A.    The pressure-to-settle allegations are legally defective. .... 12

      B.    A reservation-of-rights letter does not breach an insurance
            contract. ................................................................................ 13

      C.    Filing a lawsuit cannot result in liability for breach. ......... 14

2.    The <u>first</u> counterclaim for breach alternatively fails because Geragos
      and his firm do not and cannot allege contract damages. ............ 15

3.    The <u>second</u> counterclaim fails because bad-faith liability is
      impossible. .................................................................................. 16

4.    Leave to amend should be denied. .............................................. 18

Conclusion ........................................................................................................ 19

# TABLE OF AUTHORITIES

<u>CASES</u>

*Action Apartment Assn., Inc. v. City of Santa Monica*
   41 Cal.4th 1232 (2007)                                                 15

*Aguilera v. Pirelli Armstrong Tire Corp.*
   223 F.3d 1010 (9th Cir. 2000)                                          15

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)                                                    13

*Balistreri v. Pacifica Police Dept.*
   901 F.2d 696 (9th Cir. 1990)                                        18-19

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007)                                                  13

*Brandt v. Sup. Ct.*
   37 Cal.3d 813 (1985)                                          16, 18

*Buss v. Sup. Ct.*
   16 Cal.4th 35 (1997)                                              11

*Cassim v. Allstate Ins. Co.*
   33 Cal.4th 780 (2004)                                         16

*Certain Underwriters at Lloyd's of London v. Sup. Ct.*
   24 Cal.4th 945 (2001)                                      11

*Clegg v. Cult Awareness Network*
   18 F.3d 752 (9th Cir. 1994)                                   10, 12, 16

*Dynamic Concepts, Inc. v. Truck Ins. Exch.*
   61 Cal.App.4th 999 (1998)                                    17

*Essex Ins. Co. v. City of Bakersfield*
   154 Cal.App.4th 696 (2007)                                   11

*Everett v. State Farm General Ins. Co.*
  162 Cal.App.4th 649 (2008)                    17

*Feldman v. 1100 Park Lane Associates*
  160 Cal.App.4th 1467 (2008)                15

*Flatley v. Mauro*
  39 Cal.4th 299 (2006)                    18

*In re Facebook Privacy Litigation*
  791 F.Supp.2d 705 (N.D. Cal. 2011)          15

*Love v. Fire Ins. Exch.*
  221 Cal.App.3d 1136 (1990)               16

*Low v. LinkedIn Corp.*
  900 F.Supp.2d 1010 (N.D. Cal. 2012)         15

*Major v. Western Home Ins. Co.*
  169 Cal.App.4th 1197 (2009)               17

*Nunez v. Pennisi*
  141 Cal.App.4th 861 (2015)               12

*Old Republic Ins. Co. v. FSR Brokerage, Inc.*
  80 Cal.App.4th 666 (2000)                18

*Patent Scaffolding Co. v. William Simpson Constr. Co.*
  256 Cal.App.2d 506 (1967)                15

*Sherman v. The Paul Revere Life Ins. Co.*
  2004 WL 4946213 (C.D. Cal. 2004)        13-14

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001)               11

*Travelers Indem. Co. of CT v. Walker & Zanger, Inc.*
  221 F.Supp.2d 1224 (S.D. Cal. 2002)         15

*Val's Painting & Drywall, Inc. v. Allstate Ins. Co.*
  53 Cal.App.3d 576, (1975)                14

*W. Reserve Oil & Gas Co. v. New*
   765 F.3d 1428 (9th. Cir. 1985)                                  10

*Walsh v. West Valley Mission Community College Dist.*
   66 Cal.App.4th 1532 (1998)                                 11


## STATUTES & RULES

Cal. Civ. Code § 47                                     2, 15, 18

Cal. Civ. Code § 2860                                      1

Cal Civ. Code § 3294(a)                                   16

Federal Rule of Civil Procedure 12(b)(6)        2, 10-11, 13

Federal Rule of Civil Procedure 15(a)(2)              18


## OTHER SOURCES

3 Moore, Federal Practice (2d ed. 1948)              19

Cal. Civ. Jury Instr. No. 303                           11

Croskey, et al., Cal. Practice Guide: Insurance Litigation
   (The Rutter Group 2021)                             17

# INTRODUCTION

This insurance lawsuit arises from the criminal affairs of Michael Avenatti, who is not a party here.  The dispute is instead between, on the one hand, well-known lawyer Mark Geragos—marked by federal prosecutors as Avenatti's co-conspirator—and his law firm, Geragos & Geragos, APC, and, on the other hand, the firm's professional-liability insurer, Associated Industries Insurance Company, Inc. In an underlying case, a former Avenatti client has sued Geragos for his role in an alleged conspiracy with Avenatti to extort athletic conglomerate Nike, resulting in Geragos and Avenatti becoming targets of a federal investigation and Avenatti's imprisonment—with Geragos as an unindicted co-conspirator.  Geragos tendered to Associated; Associated accepted the tender, reserved rights, offered independent counsel under Civ. Code § 2860, and has defended the suit from inception.

Associated then filed this lawsuit against Geragos and his firm alleging three claims.  One is for a declaratory judgment that, because of a policy exclusion, Associated owes no duty to defend the underlying suit.  In the second, Associated seeks to rescind its policy and, in the third, asks for a corresponding declaratory judgment on grounds that Geragos's firm misrepresented material facts in insurance applications by not reporting the Nike matter or the government's criminal investigation.  Geragos and his firm have answered and countersued both Associated and the firm's previous professional-liability insurer alleging three discrete counterclaims against Associated.  Associated now moves to dismiss two of those counterclaims.

The <u>first</u> counterclaim, for breach of contract, necessarily fails because no facts are alleged demonstrating a plausible breach of Associated's policy.  Geragos and the firm concede that Associated is defending the underlying lawsuit, and so allege instead that Associated breached because it wrongfully reserved rights and wrongfully filed this lawsuit.  As a matter of basic contract law, however, an insurer reserving rights and seeking equitable relief cannot amount to a breach.  Breach

liability premised on litigation conduct, moreover, is impossible under California's litigation privilege, Civ. Code § 47, subd. (b)(2).

Geragos's alternative, novel theory of breach is that Associated improperly "pressured" Geragos to settle the *Franklin* suit. This theory also fails because it is alleged as a boilerplate conclusion. No pleaded *facts* suggest that Associated and Geragos ever discussed settlement at all.

Finally, the <u>first</u> counterclaim fails in toto because no facts are or can be pleaded showing that Geragos and the firm are entitled to recover <u>damages</u> for breach of contract.

The <u>second</u> counterclaim for breach of the implied covenant of good faith and fair dealing fails as a matter of law because Associated has done nothing wrong. Geragos and his firm cannot plead a withholding of any policy benefits, which is an essential element of a bad-faith claim. And the <u>second</u> counterclaim—again premised on Associated filing suit—is also barred by the litigation privilege.

Both counterclaims therefore fail as a matter of law. Associated thus moves to dismiss with prejudice under Rule 12(b)(6).

## PLEADED FACTS

### 1.    The Associated policy.

Geragos's amended answer and counterclaim (ECF 23) attached a full copy of Associated's policy as Exhibit B. (ECF 23-2.) The policy was issued to Geragos & Geragos as named insured, became effective August 27, 2020, and expired on August 27, 2021. (ECF 23-2, p. 6.) The policy makes firm partners like Geragos insureds "while acting within the scope of their duties … in rendering Professional Services." (*Id*. at p. 20 [definition J.(2), defining "Insured"].) "Professional Services" is defined to mean "services provided by any Insured to others as a lawyer" or "services performed by any Insured … in the rendering of services ordinarily performed by a lawyer." (*Id*. at p. 23.)

The policy contains various "Insuring Agreements," starting with Agreement

A.  (*Id.* at p. 18.)  It says Associated will pay "Damages and Claim Expenses" that an "Insured shall become legally obligated to pay as a result of a Claim … for a Wrongful Act …." (*Id.*)  The policy later defines "Claim" in part to mean a civil lawsuit (*id.* at p. 19), "Claim Expenses" to mean, among other things, "reasonable and necessary" fees charged by a defense lawyer (*id.*), and "Damages" to mean "any compensatory sum which the insured becomes legally obligated to pay" such as "monetary judgments or settlements." (*Id.* at p. 20.)  "Wrongful Act," meanwhile, is defined in relevant part as "any actual or alleged act, error, or omission committed or attempted in the rendering or failure to render Professional Services," i.e., services provided to others as a lawyer.  (*Id.* at p. 23.)

Agreement A thus promises that when an insured is sued for non-excluded acts or omissions in providing legal services to others, Associated will pay for the defense and pay a settlement or judgment.  Likewise, Agreement C, titled "Defense," says that Associated "shall have the right and duty to defend" such lawsuits, "even if the allegations … are groundless, false, or fraudulent."  (*Id.* at p. 18.)

**2.    The *Franklin* lawsuit.**

The underlying suit is captioned *Franklin v. Geragos*, Los Angeles Sup. Ct. No. 20STCV37797.  Geragos's amended answer and counterclaim here (ECF 23) attached copies of the initial and amended *Franklin* complaints.  (ECF 23-3, 23-4.)  The *Franklin* allegations are referenced here not for their truth but to explain the nature of the claims made against Geragos.

In *Franklin,* Gary Franklin claims to be the head coach of a prominent prep basketball program in Southern California.  (ECF 23-3, p. 3, ¶ 1.)  In 2019, he hired Avenatti to pursue Nike after the company terminated Franklin's sponsorship contract.  (*Id.* at p. 6, ¶ 15.)  Avenatti instead used the matter for his "own personal benefit" by using information from Franklin about Nike illegally paying amateur basketball players "to extort Nike."  (*Id.* at ¶ 17.)  Avenatti "threaten[ed] to publicly reveal" this "damaging confidential information" if Nike did not settle with Franklin

MEMORANDUM IN SUPPORT OF ASSOCIATED'S MOTION TO DISMISS AMENDED COUNTERCLAIMS

1   *and* pay Avenatti tens of millions of dollars.  (*Id*.)

2       To begin this scheme, Franklin alleges, "Avenatti wrote Geragos"—who had

3 previously counseled Avenatti regarding domestic-violence allegations—"and

4 suggested they work together on [Franklin's] case," telling Geragos that "'I got

5 called on a very big case against Nike.  This might make a lot of sense together.' "

6 (*Id*. at ¶ 18.)  "Geragos readily agreed, replying, 'Did I mention my relationship with

7 the General Counsel is fantastic.' "  (*Id*.)  Avenatti and Geragos then "agreed to work

8 together on behalf of" Franklin but also to secure "a retainer of tens of millions of

9 dollars from Nike to conduct an internal investigation," knowing that a more

10 reputable lawyer "like Geragos" was needed to make this deal work.  (*Id*.)

11       In mid-March 2019, Avenatti and Geragos met with Nike representatives in

12 New York.  (*Id*. at p. 7, ¶ 20.)  Both lawyers allegedly told Nike that Franklin "had

13 information that they perceived as extremely damaging to Nike if made public" and

14 "threatened to hold a press conference to publicly reveal this information unless Nike

15 both" paid Franklin $1,500,000 and "hired Avenatti and Geragos to conduct" an

16 internal investigation.  (*Id*.)  After the meeting, Nike contacted federal prosecutors

17 "to report" Geragos and Avenatti.  (*Id*. at pp. 7-8, ¶ 21.)

18       The next day in a conference call with Nike, Avenatti explained "that he

19 expected to 'get a million five for our guy' [Franklin] and that he and Geragos would

20 be 'hired to handle the internal investigation.' "  (*Id*. at p. 8, ¶ 22.)  Franklin says

21 "Avenatti and Geragos made clear that their demand was not just to be retained by

22 Nike to conduct the internal investigation, but also to be paid at least $10 million or

23 more in exchange for not holding a press conference."  (*Id*.)  Avenatti repeatedly told

24 the Nike representatives that he was "not [expletive] around" and would "go take ten

25 billion dollars of [Nike's] market cap" if the demands were not met.  (*Id*. at ¶ 23.)

26 When Nike "tried to steer the discussions back to a legitimate settlement with

27 [Franklin] rather than an unwarranted payoff of Geragos and Avenatti," "Geragos

28 and Avenatti balked at each attempt."  (*Id*. at ¶ 24.)

1   In a third meeting between these parties, Avenatti said "that he and Geragos
2   would require a $12 million retainer to be paid immediately, with a minimum
3   guarantee of $15 million in billings and a maximum guarantee of $25 million in
4   billings." (*Id.*) Nike's lawyer balked and "Avenatti responded by asking whether
5   that attorney had ever 'held the balls of the client in your hand where you could take
6   five to six billion dollars market cap off of them?' " (*Id.*)

7   When Nike's attorney responded by again proposing a simple $1,500,000
8   settlement to Franklin, Geragos stated " 'it was a strange question' to even suggest
9   that [Franklin] would be paid without separately paying Geragos and Avenatti and
10  that [Geragos] understood that Nike might like to get rid of the problem in 'one fell
11  swoop,' rather than have it 'hanging over their head.' " (*Id.* at p. 9, ¶ 25.) Geragos
12  also stated that "one of the reasons 'we're on [Franklin's] side' was to 'cash checks.'
13  " (*Id.* at ¶ 26.) He and Avenatti then "counteroffered that '[i]f [Nike] wants to have
14  one confidential settlement and we're done, they can buy that for twenty-two and a
15  half million dollars and we're done …." (*Id.*, brackets & ellipses orig.)

16  Two hours later, Avenatti posted on Twitter about a prosecution of Adidas
17  involving "corrupt and improper payments to amateur athletes." (*Id.* at p. 10, ¶ 27.)
18  "Avenatti texted Geragos" that this was a "[w]arning shot" to Nike. (*Id.*)

19  Four days later, Avenatti learned that the FBI had "visited" Franklin. (*Id.* at ¶
20  28.) Avenatti then posted on Twitter that he would soon hold a "press conference to
21  'disclose a major high school/college basketball scandal perpetrated by @Nike that
22  we have uncovered." (*Id.*) Avenatti was promptly arrested. (*Id.* at ¶ 29.)

23  Two months later, prosecutors from the Southern District of New York
24  unsealed an indictment charging Avenatti with four felony counts of conspiracy and
25  extortion. (*Id.* at ¶ 30.) The indictment did not mention Geragos by name, but did
26  repeatedly refer to him "as Avenatti's 'co-conspirator' in the scheme." (*Id.* at ¶ 30.)
27  The government declined to prosecute Geragos; Avenatti was eventually convicted
28  on three felony counts following a superseding indictment. (*Id.* at p. 11, ¶ 32.)

MEMORANDUM IN SUPPORT OF ASSOCIATED'S MOTION TO DISMISS AMENDED COUNTERCLAIMS

1    Avenatti, per recent reports, has been sentenced to 30 months in prison.[1]

2         Franklin alleges that Geragos's work in connection with the Avenatti-Nike

3    fiasco caused him "severe harm," including loss of Nike's "$1.5 million settlement

4    offer" and loss of certain claims due to statutes of limitation (ECF 23-3, pp. 11-12, ¶

5    33); unwanted publicity and reputational damage (*id*. at p. 12, ¶ 34); loss of income

6    (¶ 36); and loss of sponsors, including famous rappers and Netflix.  (¶ 37.)

7         Franklin thus sued Geragos in October 2020 in in Los Angeles Superior Court

8    alleging claims for "Fraud (Concealment)," "Constructive Fraud," "Aiding and

9    Abetting Fraud (Misrepresentation)," "Aiding and Abetting Fraud (Concealment),"

10   "Aiding and Abetting Constructive Fraud," "Aiding and Abetting Breach of

11   Fiduciary Duty," "Breach of Fiduciary Duty," "Legal Malpractice," "Negligent

12   Infliction of Emotional Distress," and "Civil Conspiracy."  (*Id*. at p. 2 [complaint

13   caption].)  Franklin recently amended the complaint alleging the same causes of

14   action, minus negligent infliction.  (ECF 23-4, p. 2 [complaint caption].)

15   **3.    Associated defends Geragos in *Franklin* under reservations of rights.**

16        Geragos tendered the *Franklin* suit to Associated under the policy discussed in

17   Section 1 above.  (Answer, ECF 23, p. 3, ¶ 9.)  As acknowledged in the amended

18   counterclaims, "Associated agreed to defend Mr. Geragos under a purported

19   reservation of rights," including "the right to disclaim or to rescind or reform the

20   [Associated Policy] in whole or in part in reliance on the representations and

21   warranties contained in the renewal application [Mr. Geragos] signed on August 1,

22   2020."  (ECF 23, pp. 12-13 ¶ 17, quoting reservation letter.)

23   **4.    This lawsuit.**

24        Associated later filed this lawsuit against both Geragos and his firm.  The

25   complaint asserts three claims for equitable relief.

26        The first claim, against both defendants, asks for a judgment rescinding

27   _____

28   [1] https://www.cnbc.com/2021/07/08/michael-avenatti-sentencing-nike-extortion-case.html

1   Associated's policy on grounds that the firm's insurance applications, signed and

2   submitted by Geragos, misrepresented and concealed material facts about the

3   Avenatti events which, if disclosed, would have resulted in either higher premiums

4   or no coverage issuing at all.  (ECF 1, ¶¶ 11-14.)  The second asks for a declaratory

5   judgment that Associated owes no duty to defend Geragos in *Franklin* on grounds

6   that rescinding the policy means it never legally existed.  (*Id*. at ¶¶ 15-17.)  The third

7   asks for an alternative declaratory judgment that Associated owes no duty to defend

8   *Franklin* because of a policy exclusion.  (*Id*. at ¶¶ 18-20.)  Geragos and the firm

9   initially answered and counterclaimed on August 2, 2021 (ECF 17) and have now

10   amended both pleadings.  (ECF 23.)

11        Despite admitting in the amended answer (at ECF 23, p. 3, ¶ 9) "that

12   Associated agreed to defend Mark Geragos in the *Franklin* action and purported to

13   reserve its rights," Geragos and the firm have now alleged three counterclaims

14   against Associated and the firm's prior insurer for professional liability, Arch

15   Insurance Company.  (*Id*. at pp. 8-20.)  This motion focuses on the <u>first</u> and <u>second</u>

16   counterclaims asserted against Associated alone for "Breach of Contract" and

17   "Breach of the Implied Covenant of Good Faith and Fair Dealing," i.e., bad faith.

18   The pleaded factual support for these claims is as follows:

19        It is first alleged that "Associated … promised to defend and indemnify the

20   Insureds against professional liability lawsuits" but that Associated "sought to renege

21   on its duties, arguing that the claim is … not covered at all."  (*Id*. at p. 8, ¶ 1.)

22   "Making matters worse, without any legitimate or reasonable basis, Associated filed

23   this lawsuit in a bad-faith attempt to rescind its policy—forcing its insureds to

24   defend against yet another lawsuit, thereby diverting resources that should be

25   focused on defending the *Franklin* lawsuit, which is ongoing."  (*Id*.)

26        Next, at ECF 23, pp. 12-13, ¶ 17, the counterclaims describe Associated's

27   agreement to defend Geragos under reservation of rights, specifically "the right to

28   disclaim or to rescind or reform the [Associated Policy] in whole or in part in

1  reliance on the representations and warranties contained in the renewal application
2  [Mr. Geragos] signed on August 1, 2020." (*Id.*, quoting reservation letter).  Geragos
3  and the firm allege that "Associated lacked any legitimate basis to threaten rescission
4  and, on information and belief, had not performed a good faith, meaningful
5  investigation prior to falsely accusing its insured of misrepresentations or
6  misstatements in the renewal application." (*Id.*)

7        It is then alleged that after "unjustifiably threatening to rescind" the policy
8  "and lobbing false accusations against" Geragos in the reservation letter,
9  "Associated proceeded to put undue pressure on Mr. Geragos to settle
10 the *Franklin* lawsuit." (*Id.* at p. 13, ¶ 18.)  Geragos and the firm speculate that this
11 unexplained "persistent pressure to settle—particularly in light of its rescission
12 threat—was motivated by Associated's financial self-interest and its desire to avoid
13 having to pay for the defense of the *Franklin* lawsuit." (*Id.*)  They also claim that
14 "[w]hen Mr. Geragos refused to bend to Associated's pressure to settle
15 the *Franklin* lawsuit, Associated followed through on its threat and filed this
16 lawsuit" containing allegations that Geragos " 'misrepresent[ed] knowledge of facts
17 and circumstances that could result in a claim being made against' " him, and
18 alternatively that " 'coverage is barred by' " an exclusion.  (*Id.* at ¶ 19, quoting
19 Complaint at ¶¶ 6, 19.)  It is further alleged that "Associated did not immediately
20 serve its complaint," but rather "continued to put undue and unwarranted pressure on
21 Mr. Geragos to settle the *Franklin* lawsuit" for a few months, "at times even
22 expressly referencing the fact that the defense of the case would be costly."  (ECF
23 23, p. 13, ¶ 20.)

24       Geragos allegedly withstood all of this alleged pressured and maintained his
25 "refusal to settle the *Franklin* lawsuit."  (*Id.* at pp. 13-14, ¶ 20.)

26       From this "timeline," Geragos and the firm conclude that Associated's
27 "unsubstantiated and unjustified threat of rescission (and its subsequent follow-
28 through)"—i.e., Associated's reservation-of-rights letter and its complaint here—

"was motivated by self-serving considerations, namely Associated's desire to strong-arm Mr. Geragos into settling the *Franklin* claim in a manner that would advance Associated's interests rather than the Insureds' interests."  (*Id*. at p. 14, ¶ 21.)

Then, after two paragraphs alleging that Geragos reported the Avenatti claim to Arch (but not Associated) the amended counterclaim alleges at p. 14, ¶ 24 that "regardless of" whether Associated "is obligated to cover the *Franklin* lawsuit, Associated has acted in bad faith in unreasonably threatening and seeking to rescind its policy"—that is, by issuing a reservation-of-rights letter and filing a lawsuit for equitable relief.  "Associated," it is claimed, "lacks any legitimate basis to seek rescission and, on information and belief, Associated sought rescission"—filed suit—"without performing a good-faith investigation and without having a good-faith basis to lob false accusations against its insureds.  Through this conduct, Associated has breached the implied covenant of good faith and fair dealing in its policy, and its bad faith has caused, and is causing, the Insureds to suffer considerable damage."  (*Id*. at pp. 14-15, ¶ 24.)

Based on these allegations, the <u>first</u> counterclaim for breach suggests (without explication) that Associated tried to "interfere with" Geragos's right "to receive benefits due under" the policy and did not "give at least the same level of consideration to the Insureds' interests as it gave to its own interests."  (*Id*. at p. 15, ¶ 26.)  Associated is also accused of "threaten[ing] to withhold benefits due under" the policy "maliciously and without probable cause," and of trying to "injur[e] its insureds by depriving them of the benefits of the" policy.  (*Id*.)  It is then alleged (at ¶ 27) that "Associated breached" the policy in five ways (verbatim):

a.  asserting grounds for rescinding the Associated Policy that it knows are not supported by, and in fact are contrary to the law, insurance industry custom and practices, and the facts;

b.  unreasonably seeking to pressure Mr. Geragos to settle the *Franklin* claim to advance Associated's interests at the expense

1    of its Insureds' interests;

2        c.   giving greater consideration to its own interests than it gave the

3             Insured's interests;

4        d.   threatening to rescind, and subsequently seeking to rescind,  the

5             Associated Policy without performing a good-faith investigation

6             regarding its position and without having a reasonable or

7             legitimate basis to seek rescission; and

8        e.   otherwise refusing to perform its duties under the Associated

9             Policy.

10       The *second* counterclaim then alleges that Associated has committed bad faith.

11   (*Id*. at pp. 16-18, ¶¶ 29-36.)  The *facts* ostensibly supporting such liability—as

12   opposed to boilerplate claims about malice, oppression, despicable conduct,

13   conscious disregard, and the like—are the same as those pleaded in the breach-of-

14   contract count.  Paragraph 30 repeats paragraph 26, quoted above.  Paragraph 31

15   then repeats the same points a. through e. from paragraph 27, except that it expands

16   point e. by saying that "Associated acted in bad faith" by "otherwise acting as

17   alleged above."  (*Id*. at ¶ 27(d).)  Geragos and the firm demand punitive damages and

18   their attorney's fees "incurred … in defending Associated's baseless and bad-faith

19   rescission claim."  (ECF 23, pp. 17-18, ¶¶ 34, 36.)

20       Associated now moves to dismiss the <u>first</u> and <u>second</u> counterclaims for

21   breach contract and for bad faith under Rule 12(b)(6).

22                                    **DISCUSSION**

23       On a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true

24   and construed in the light most favorable to the non-moving party."  *W. Reserve Oil*

25   *& Gas Co. v. New,* 765 F.3d 1428, 1430 (9th. Cir. 1985).  But the Court need not

26   accept the non-moving party's "legal conclusions cast in the form of factual

27   allegations if those conclusions cannot be reasonably drawn from the facts alleged."

28   *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994).  Moreover, the

Court "need not…accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" such the copy of Associated's policy attached to Geragos's answer and counterclaims as Exhibit 2 (ECF 23-2).  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**1.**   **The <u>first</u> counterclaim fails because Geragos cannot allege any facts showing Associated <u>breached</u> the policy.**

Geragos and the firm cannot win the breach-of-contract counterclaim without allegations and (ultimately) proof that, among other things, Associated "failed to do something that the [policy] required" or "did something that the [policy] prohibited." Cal. Civ. Jury Instr. [CACI] No. 303 ("Breach of Contract—Essential Factual Elements").  This means, to survive Rule 12(b)(6), facts must be pleaded plausibly showing that Associated breached.  *Walsh v. West Valley Mission Community College Dist.*, 66 Cal.App.4th 1532, 1545 (1998).

In this regard, Associated's policy affords "third party coverage," meaning it "protects the insured against liability to another based on the insured's act(s)."  *Essex Ins. Co. v. City of Bakersfield*, 154 Cal.App.4th 696, 705 (2007) (cit. omitted).  The policy does this through Insuring Agreements A and C (ECF 23-2, p. 18), which "provide, in pertinent part, that [Associated] has a duty to indemnify the insured for … damages for any covered claim" and also "that [Associated] has a duty to defend the insured" against suits "seeking damages for any covered claim."  *Buss v. Sup. Ct.*, 16 Cal.4th 35, 46 (1997).  These two duties are "the core of the standard policy" of liability insurance.  *Certain Underwriters at Lloyd's of London v. Sup. Ct.*, 24 Cal.4th 945, 958 (2001).

The counterclaims do not allege that Associated breached either duty.  Nor can they.  As Geragos and his firm admit, Associated is defending *Franklin* and there is nothing to indemnify because that suit remains ongoing.

Instead, Geragos and his firm hinge liability for breach on nebulous claims that Associated tried to "interfere with the right of" Geragos "to receive benefits due

under" the policy and did not "give at least the same level of consideration to" Geragos's and the firm's "interests as it gave to its own interests." (ECF 23, p. 15, ¶ 26.) They also suggest breach of a "duty not to threaten to withhold benefits due under" the policy "maliciously and without probable cause, for the purpose of injuring its insureds by depriving them of the benefits of the" policy. (*Id*.)

The Court should disregard the meaningless claim that Associated "interfere[d] with" a right to "benefits due" under the policy because Associated both agreed to defend Geragos and continues to defend him. Geragos has received, and continues to receive, every benefit owed to him thus far under the contract.

The assertion that Associated acted "maliciously and without probable cause," meanwhile, merely attempts to shoehorn into a claim for breach a theory that Associated is maliciously prosecuting this lawsuit. See *Nunez v. Pennisi*, 241 Cal.App.4th 861, 872-873 (2015) (two of the "three elements" needed "to establish the tort of malicious prosecution" are that "a lawsuit … was brought without probable cause" and "was initiated with malice"). If Geragos and the firm wish to sue for malicious prosecution, they may do so if they prevail against Associated's claims. They may not cram such a theory into a breach-of-contract count.

As a basic pleading matter, moreover, paragraph 26's provocative statements about breach all are conclusions unconnected to a single pleaded *fact* and thus none can withstand a motion to dismiss. The Court should discard these "legal conclusions cast in the form of factual allegations" because they "cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

The points above by themselves suffice to support an order dismissing the <u>first</u> counterclaim. But there is more. As described below, none of the three specific theories of breach that Geragos and the firm allege support a viable claim for relief.

A.   <u>The pressure-to-settle allegations are legally defective</u>.

The allegations from counter-claim paragraphs 18-21 that Associated breached

1   because it impermissibly "pressured" Geragos to settle the *Franklin* suit are all new

2   to the amended pleading.  But Geragos pleads no facts that Associated has even

3   *discussed* settlement with Geragos, let alone "pressured" him to settle.  Geragos and

4   his firm simply include boilerplate, conclusory assertions that Associated put "undue

5   and unwarranted pressure on Mr. Geragos to settle the *Franklin* lawsuit," tried to

6   "strong-arm" him, and did so to "advance Associated's" own "interests rather than

7   the Insureds' interests."  (ECF 23, pp. 13-14, ¶¶ 18-21.)

8        Even if "undue pressure" were a cognizable theory of breach, however,

9   Geragos's and his firm's "unadorned, the-defendant-unlawfully-harmed-me"

10  conclusions are not facts capable of supporting liability under Rule 8.  *Ashcroft v.*

11  *Iqbal*, 556 U.S. 662, 678-679 (2009).  Instead, "[t]o survive a motion to dismiss,"

12  they must plead "sufficient factual matter, accepted as true, to state a claim to relief

13  that is plausible on its face." *Id*., quots. omitted.  Unless and until Geragos and his

14  firm do so, the impermissible-settlement-pressure theory of breach cannot withstand

15  Rule 12(b)(6) scrutiny because no pleaded facts demonstrate "a claim to relief that is

16  plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

17        B.    A reservation-of-rights letter does not breach an insurance contract.

18        Geragos and the firm also say that Associated breached by "unreasonably

19  threatening and asserting grounds for rescinding" its policy "that it knows are not

20  supported by" facts, law, and custom, and likewise "threatening" to rescind "without

21  first performing a good-faith investigation regarding its position …."  (ECF 23, ¶

22  27(a) & (d).)  This refers back to their earlier allegation that Associated issued a

23  reservation-of-rights letter preserving the right to seek rescission (*id*. at pp. 12-13, ¶

24  17), described as the company "unjustifiably threatening to rescind the Associated

25  policy and lobbing false accusations against its insured[.]"  (*Id*. at p. 13, ¶ 18.)

26        This is legal nonsense.  "[A] reservation of right[s] where the insurance carrier

27  has a contested duty to pay benefits to the insured does not amount to a breach of

28  contract." *Sherman v. The Paul Revere Life Ins. Co.*, 2004 WL 4946213 * 4 (C.D.

1    Cal. 2004).  Geragos's and the firm's suggestion that Associated somehow

2    "breached the policy by reserving [its] rights is inconsistent with the law and without

3    merit." *Id*.

4           Nor does it matter that Associated allegedly sent the reservation letter

5    "without first performing a good-faith investigation regarding its position" on

6    rescission.  (ECF 23, p. 15, ¶ 27(d).)  For a supposed inadequate or improper

7    investigation to mean anything, the insurer must affirmatively *act* on its reservation.

8    All the reservation-of-rights letter does is "**notify**, or attempt to notify, the assured

9    that [the insurer] is conducting the investigation and defense of the tort claim under a

10   reservation of the right to assert policy defenses at a later time …." *Val's Painting &*

11   *Drywall, Inc. v. Allstate Ins. Co.*, 53 Cal.App.3d 576, 586 (1975) (emph. added).

12   Hence the reservation of rights cannot independently support a claim of breach.

13   *Sherman*, 2004 WL 4946213 * 4.

14           C.    Filing a lawsuit cannot result in liability for breach.

15           Geragos and the firm also say that Associated, after issuing the reservation

16   letter, "followed through on its threat and filed this lawsuit."  (ECF 23, p. 13, ¶ 19.)

17   That is, they allege, Associated breached by "subsequently"—after the

18   reservations—"seeking to rescind," again without "performing a good-faith

19   investigation" and "without having a reasonable or legitimate basis to seek

20   rescission."  (*Id.* at p. 16, ¶ 27(d).)   Associated's only alleged act in "seeking to

21   rescind" was, of course, filing suit: as Geragos and the firm say at the outset,

22   "Associated filed this lawsuit in a bad-faith attempt to rescind its policy[.]"  (ECF

23   23, p. 8, ¶ 1.)  For two reasons, however, Associated cannot have breached the policy

24   by suing.

25           First, the policy contains no covenant not to sue.  This is why courts have long

26   advised liability insurers who dispute coverage for an underlying lawsuit to "defend

27   the action under a reservation of rights and while the action is pending, file a

28   declaratory relief action to obtain a declaration that no duty to defend or indemnify

1  exists which would allow [the insurer] to withdraw from the defense **without**

2  **subjecting the carrier to a claim of breach of contract or bad faith**." *Travelers*

3  *Indem. Co. of CT v. Walker & Zinger, Inc.*, 221 F.Supp.2d 1224, 1231 (S.D. Cal.

4  2002) (emph. added).  Associated is doing precisely what the courts have advised.

5  Second, California's litigation privilege categorically bars liability based on

6  any "publication" or "broadcast" that is made "[i]n any … judicial proceeding."  Cal.

7  Civ. Code § 47(b)(2).  In that way, nothing "is more clearly protected by the

8  litigation privilege than the filing of a legal action."  *Action Apartment Assn., Inc. v.*

9  *City of Santa Monica*, 41 Cal.4th 1232, 1249 (2007).

10  In this regard, the privilege bars breach-of-contract liability where—as here—

11  the alleged breach is "based on allegedly wrongful conduct by [the defendant] in

12  threatening and initiating litigation over the" contract and not on any "breach of a

13  separate promise independent of the litigation."  *Feldman v. 1100 Park Lane*

14  *Associates*, 160 Cal.App.4th 1467, 1497 (2008) (cits. omitted). Associated allegedly

15  "threatening and initiating litigation over the" policy is just what Geragos and the

16  firm claim was an actionable breach.  As a matter of law, it was not.

17  **2.     The <u>first</u> counterclaim for breach alternatively fails because Geragos and**
18  **his firm do not and cannot allege contract damages.**

19  "A breach of contract without damage is not actionable."  *Patent Scaffolding*

20  *Co. v. William Simpson Const. Co.*, 256 Cal.App.2d 506, 511 (1967).  So even were

21  the Court to find plausible allegations of breach—and the Court should not—the

22  breach counterclaim would nevertheless collapse in lieu of pleaded facts that

23  "establish 'appreciable and actual damage.' "  *Low v. LinkedIn Corp.*, 900 F.Supp.2d

24  1010 (N.D. Cal. 2012), quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d

25  1010, 1015 (9th Cir. 2000).  In that vein, "[n]ominal damages and speculative harm

26  do not suffice to show legally cognizable damage under California contract law."  *In*

27  *re Facebook Privacy Litigation*, 791 F.Supp.2d 705, 717 (N.D. Cal. 2011).

28  Despite these firm requirements, Geragos and his firm nebulously offer only

that as a "result of Associated's contractual breaches, the Insureds have sustained and continue to sustain damage in an amount to be proven at trial, plus interest thereon at the legal rate." (ECF 23, p. 16, ¶ 28.)  But the Court can and should dispense with this airy statement because it "cannot be reasonably drawn from the **facts** alleged." *Clegg*, 18 F.3d at 754-755 (emph. added).  Geragos and the firm seek no damages for breach of the duty to defend or the duty to indemnify because neither duty has been breached, and they allege no *other* contract damages.

Indeed, the entire counter-claim pleading identifies but two purported items of damage, and neither can be awarded as relief for breaching a contract.  The first is the request for "attorney's fees … in defending Associated's baseless and bad-faith rescission claim" consistent with *Brandt v. Sup. Ct.*, 37 Cal.3d 813 (1985).  (ECF 23, p. 17, ¶ 34.)  *Brandt* fees constitute "an economic loss—damages—proximately caused by the **tort**" of bad faith.  *Cassim v. Allstate Ins. Co.*, 33 Cal.4th 780, 806 (2004) (emph. added).  That recovery is predicated on proof of tortious breach; a routine breach does nothing.  *Id*.

Second is a request for punitive damages. (ECF 17, p. 16, ¶ 32.)  These, by operation of statute, are not contract damages, but rather available only upon proof of oppression, fraud, or malice "[i]n an action for the breach of an obligation **not arising from contract** …."  Cal. Civ. Code § 3294, subd. (a) (emph. added).

In short, because Geragos and his firm allege no plausible breach-of-contract damages or facts suggesting any such damages exist, the <u>first</u> counterclaim for breaching the policy is incurably defective.  The Court should dismiss it.

**3.    The <u>second</u> counterclaim fails because bad-faith liability is impossible.**

Under California law, "there are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151 (1990).  "The actionable withholding of benefits may consist of the denial of benefits

1  due; paying less than due; and/or unreasonably delaying payments due." *Major v.*
2  *Western Home Ins. Co.*, 169 Cal.App.4th 1197, 1209 (2009) (cits. omitted).

3      The <u>second</u> counterclaim for bad faith fails because Geragos and his firm do
4  not and cannot allege that Associated withheld or delayed policy benefits.
5  Associated has defended Geragos in *Franklin* since inception; nothing else can be
6  owed at this juncture.  This is why Geragos, the firm, and their seasoned insurance
7  counsel here danced around the lack-of-withholding problem in the amended
8  pleading and instead accused Associated of (all emphases added): "**threaten[ing]** to
9  withhold benefits due … for the purpose of injuring the Insureds by depriving them
10  of the benefits" (ECF 23, p. 15, ¶ 26); "consciously **attempting** to withhold from the
11  Insureds rights and benefits to which they were and are entitled" (*id.* at p. 17, ¶ 32);
12  and having "engaged in a series of acts **designed to attempt** to deny the Insureds
13  benefits due under the Associated policy."  (*Id.* at p. 17, ¶ 36.)

14      Their inability to accuse Associated of anything beyond "threatening" and
15  "attempting" to withhold benefits—colorful descriptions of Associated's reservation
16  letter and this lawsuit for equitable relief—confirms that no viable bad-faith claim
17  exists.  It can never be proved that Associated failed, let alone "unreasonably
18  fail[ed]," to provide "benefits due under the policy or the law" because Associated
19  has provided everything that can be due to Geragos.  *Dynamic Concepts, Inc. v.*
20  *Truck Ins. Exch.*, 61 Cal.App.4th 999, 1010 (1998).

21      Put differently, because Associated "did not breach the policy, it did not
22  breach the implied covenant."  Croskey, et al., Cal. Practice Guide: Insurance
23  Litigation (The Rutter Group 2021), Ch. 12A-C, ¶ 12:45; e.g., *Everett v. State Farm*
24  *General Ins. Co.*, 162 Cal.App.4th 649, 663 (2008) (if "there was no breach of
25  contract, there was no breach of the implied covenant" as a matter of law).
26  Associated has not breached because it has not withheld anything due to Geragos;
27  Associated has likewise not breached for all the reasons discussed earlier.

28      The Court could read no further and dismiss the <u>second</u> counterclaim without

1   leave on these grounds.  But the Court can alternatively dismiss based on the

2   litigation privilege, Civ. Code § 47(b)(2), discussed above.  After all, Geragos and

3   the firm say in paragraph 1 that "Associated filed this lawsuit in a bad-faith attempt

4   to rescind its policy," followed by paragraphs 27(d) and 31(d) accusing Associated

5   of "seeking to rescind" after issuing the reservation letter "without having a

6   reasonable or legitimate basis" to do so.  Even the claim for *Brandt* fees turns on the

7   (novel) theory that Geragos and the firm incurred "attorney's fees … in defending

8   Associated's baseless and bad-faith rescission claim."  (*Id*., p. 17, ¶ 34.)

9        The privilege bars this litigation-premised bad-faith theory because the

10   underlying *Franklin* "claim has been fully and promptly paid" by Associated.  *Old*

11   *Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal.App.4th 666, 688 (2000).  As such,

12   Geragos "cannot contend that [he] has been denied the security against losses and

13   third party liability that [the firm] purchased under the express terms of the policy,

14   and the only uncertainty [Geragos] faces is whether [Associated] is entitled to

15   recover some or all of the policy proceeds in a judicial proceeding."  *Id*.  "Absent

16   recovery for bad faith," Geragos nevertheless remains "protected from abusive

17   litigation" by "the availability of an action for malicious prosecution[.]"  *Id*.  That is

18   because the litigation privilege categorically "bars all tort causes of action"—like

19   bad faith— "**except** a claim of malicious prosecution."  *Flatley v. Mauro*, 39 Cal.4th

20   299, 322 (2006) (emph. added).

21        Geragos and his firm are free to sue for malicious prosecution if they defeat

22   Associated's affirmative claims.  They may not recast malicious-prosecution

23   theories—claiming Associated sued "without having a reasonable or legitimate

24   basis"—as allegations of bad faith.  The current attempt to do is legally meritless.

25   **4.    Leave to amend should be denied.**

26        A court should "freely give leave" to amend only "when justice so requires."

27   Fed. R. Civ. P. 15(a)(2).  Leave is typically granted if it is "at all possible that the

28   plaintiff" is capable of correcting the defect.  *Balistreri v. Pacifica Police Dept.*, 901

1   F.2d 696, 701 (9th Cir. 1990), quoting 3 Moore, Federal Practice, § 15.10 at 838 (2d
2   ed. 1948).  But leave is properly denied if amendment would be futile.

3       Here, the defective counterclaims cannot be cured.  The <u>first</u> counterclaim for
4   breach is fatally flawed because it is indisputable that Associated has defended
5   Geragos and thus committed no breach and because no facts are or can be pleaded to
6   show contract damages.  The <u>second</u> counterclaim for bad faith is likewise
7   unsalvageable because there was no underlying breach, because Geragos and his
8   firm cannot allege that any policy benefits were withheld, and because the stated
9   theory of liability is barred by California's litigation privilege.  A third round of
10  pleadings—Geragos having already amended once in the face of Associated's
11  planned motion to dismiss the initial counterclaims—would serve no purpose.

12                          **CONCLUSION**

13      To be sure, Associated disputes coverage for *Franklin* and contends the policy
14  should be rescinded.  But it has done what courts say responsible insurers should do
15  by defending Geragos under a reservation of rights and then seeking judicial relief.
16  Geragos's displeasure with Associated's lawsuit cannot transform Associated's
17  legally prescribed course of conduct into a breach, let alone a tortious breach, of its
18  insurance contract as a matter of law.

19      The pleaded counterclaims for breach and bad faith accordingly fail and
20  amendment can do nothing to alter this outcome.  The Court should thus dismiss
21  Geragos's first and second counterclaims without leave to amend.

22

23                          Respectfully submitted,

24  September 7, 2021              NIELSEN KATIBAH, LLP

25

26                          By:_____/s/  Daniel N. Katibah_____
                               Daniel N. Katibah
27                             Attorneys for Plaintiff/Counter-Defendant
                               Associated Industries Ins. Co., Inc.
28

---